Good morning, your honors. May it please the court, Ted Becker on behalf of Anderson Excavating & Wrecking. This is a case that arises out of a claim brought by a union and two trust funds for alleged unpaid delinquencies related to supposedly covered work under a heavy highway agreement. Anderson's appeal today is focusing on the assessment relative to one particular employee, Jose Tovar. It's important to note that Jose Tovar is not a union member. He receives no benefit from the unions or any of the associated funds. The contention of the unions, and this is reflected in the testimony of their very first witness, the designated trustee plaintiff, Mr. Rod Marshall, that acknowledged that mechanics, when they're working in the contractor's yard, are not covered by the heavy highway agreement. That's at page 73 of the trial testimony. Their contention is that when you send a mechanic out to a covered job site, that's when the mechanic becomes subject to review and consideration and inclusion for an obligation to make payment and remittance. In this case, the union testified, and this is Don Helms' testimony at page 359 of the trial transcript, that they conducted an audit and they focused on one particular job site, what was known as the Kiewit job site, the project that's a billion-dollar project down in Offutt Air Force Base. Their contention was that Mr. Tovar had unreported time. They did find that in November of 2012, and this is at Exhibit 11, page 3, there were 18 hours of Mr. Tovar's time reported on certified payroll reports, which are in evidence as Exhibit 66 in the record. Over a three-year time period of this audit, there is one month where Mr. Tovar's down at the actual job site, the only job site that is the subject of this audit, and there are certified payroll records reflecting his time at that particular job site. It's 18 hours. The union thereafter goes on to say, well, there was a comment made by her office manager that Jose works 15% outside of the office. The office manager, Eileen Kaler, denied ever making the statement, denied being asked that. She testified she wouldn't know. She works in an office. Tovar works at the mechanic shop. She wouldn't even be in a position to know. And it's also undisputed that before suit was filed, when there was this argument that we're going to allocate another 15% of Tovar's time, that Kaler contacted the auditor and said, that's wrong. You shouldn't include Mr. Tovar. It's important to also note that the court in this case, in its ruling, said at page 19, I think this is at our addendum, it's the court's ruling of August 11, 2016. The court finds the defendant's liable for delinquent contributions for 100% of the hours Tovar worked performed on the STRATCOM project. That's the 18 hours. And for 15% of the other hours work Tovar performed during the audit period, as represented by the audit letter. The problem with this is Don Helms of the union and their auditor, Joanne Walde, said the only project they looked at, the only project that was subject to this audit, was STRATCOM. So when the judge concludes that I'm going to allocate 100% of Tovar's hours, and we're not challenging it on appeal. It's not worth it to fight over. This 18 hours he went to the job site. Okay, include that. But if your audit only covers this project, and we provided you those certified payroll records, then it becomes improper to make this assumption about the estimate of the time he spent on the project. Because it's disproven by Exhibit 66. The payroll records they have, that they got from Kiewit, that they withheld from Anderson, which is acknowledged in their testimony, that they didn't disclose that they had when they were doing the audit. They had records showing how much time this particular gentleman was at the one job site that was the subject of their audit, and it showed only 18 hours. When you take that 18 hours out, it reduces the claim, the judgment the court assessed from 11,000 down to about 4,000, which has a cascading effect, which affects the interest, which affects the liquidator damages, and which should affect the attorney fees under the Lodestar analysis. Now, what the union will come back and say is, well, your person said it was 15%, and the court accepted that 15% estimate. I would respectfully submit that the court erred in that regard, and it's demonstrated by the union's own brief. At page 7 of their brief, they make the acknowledgement that they said, Anderson represented that Tovar spent 15% of his total hours doing covered work at job sites. They then cite to page 242, page 332, page 361, and page 387. Have your law clerks go check out every one of those passages. Not a single one says it's covered work. I specifically asked Don Helms, the supposed question did you ask, did you ask where the job site was? No. That becomes important because this heavy highway agreement only covers heavy highway work. It doesn't cover all the work Anderson performs, and the testimony is Anderson does some construction work, Anderson does demolition work, Anderson does asbestos abatement work. This particular contract only covers heavy highway work. It doesn't cover asbestos, so it doesn't cover all of Anderson's work. In addition, it's geographically limited. It does not cover work in Iowa, Missouri, Kansas, Minnesota, even western Nebraska. It's essentially a three-county radius where there's covered work. I asked, did you ever ask where this work was? No. That becomes significant because on this burden shifting that the court engages in to reach the end result, it assumes that there was this request, how much covered work was done. But that was never asked of Eileen Kaler. At best, there is, he goes to job sites 15% of the time. So what? Half of their work is outside of heavy highway contracting. A portion of their work is outside the geographic location. Unless the auditor does her job and says, did you have work within this geographic location and what sort of work was it? They don't get the presumption. They haven't even begun to do a proper analysis. It's also significant to note that the auditor, Ms. Waldie, testified. She didn't even hear the statement about Jose Tovar. I did my cross-examination. She acknowledged it. Well, I wasn't part of that conversation. I didn't hear the bit about Jose Tovar. So the person doing the audit didn't even hear this supposed 15% analysis point. The cases relied upon by the court and the union, the Michigan Labors and the Bricks Mason case, talk about a burden shifting when an employer refuses to hand over records and also doesn't maintain records on union employees. The Michigan Labor case says that the ruling applied to, quote, employees who are participants in employee benefit plan. Jose Tovar is not a member of the union. We don't have to keep all these detailed records on him. The Bricks Mason case says the employer has to maintain records with respect to each of his employees sufficient to determine benefits due or which may become due to such employees. Because he's not a union member and because he doesn't get benefits, we don't have to keep particular records on him. The evidence in this case demonstrates for 20 years Jose Tovar had worked for Anderson. They'd never made a contribution for him because the assumption and understanding always was mechanics aren't covered. Now, the union developed during this audit procedure that, well, if you go to the job site and you're doing certain mechanical work at the job site, then we're going to cover you. Okay. They have the certified payrolls for a three-year time period. And for that, the one project they're auditing during that entire three-year time period, he's there for 18 hours. They turn that 18 hours, which would have been a contribution of about $1,800, into a claim for $11,000. It's tripled with interest and liquidated damages and then another $30,000 nearly in attorney fees. It is preposterous that we've reached this point. Did you make these arguments to the district court? Yes, we did. I mean, that's precisely my argument, my cross-examination. You didn't ask where. And I said, we provided you all the payroll records. I have detailed examinations where I said, is there any record Anderson didn't give you? No. Did they provide you the opportunity to talk to employees? Yes. Did you make employees available if they asked? Yes. Did they ever ask to talk to Tovar? No. Those cases that they rely upon are when employees are playing games and hiding them. We not only made our records available, we gave them access to our payroll supply company. They got detailed time records. They also went and separately got the records from Kiewit Phelps on the one project they were auditing. This is not a situation where they didn't have access to records or information or we were hiding the ball from them. We gave them full access, and I asked both the auditor and her assistant from the union, was there anything that you asked for that Anderson refused to provide you? And the answer was no. So I would respectfully submit, as pointed out in our brief, what we have here is more like the Carpenter's fringe benefit versus McKenzie case, which rejected the notion of this burden shifting to the employer when there's a failure of proof. And in that case, the court said, the problem arises because of assumptions the funds made in interpreting records. McKenzie has come forward with evidence establishing that the auditor's assumptions were unfounded. This left the funds with an unremitied failure of proof. In this case, they had a flawed assumption. Their assumption is, well, if this, Eileen allegedly said 15% of the times at a project, well, then we're going to charge 15% of all of Jose Tovar's recorded time over this three-year time period. But they never asked, was it covered work? Where was the work? They never got details to put it within the jurisdiction. And we did give them records. We gave them the certified payroll records of the one job they audited. And the testimony was, the employees have an incentive to make sure they're recorded. Why? Because it's a Davis-Bacon job. And they make more money. In addition, because it's off it, they have to check on to the base. It's a secured site. So there are records when these guys go on to this site. There are guys with guns at the gate checking you in. I've been down there. You're not just going to roll into off it and wander in there and start doing some work. I respectfully submit that on the evidence, there just was a failure of proof. And the district court made an inappropriate extension of that shifting burden and assumption. We gave them the records. Do you want to address at all the alter ego conclusion as it relates to Tovar and the two companies? I think it's an error for the court to sui sponte do that. They say, why sprung it on them? They don't allege in their complaint that Tovar is an employee of Anderson, so there's nothing to admit. There wasn't a request for admission in the record asking us to admit that he was an employee. I simply put them on their burden of proof to prove that this gentleman was an employee of Anderson Excavating. It's undisputed that he's technically an employee of Anderson Excavating Plus. And that's one of the mechanisms they use because some of their work's union, some is non-union. They get the union employees in one company, non-union employees in another company. If he goes and does union work, they remit on him. But the fact of the matter is that's their burden of proof. They undisputedly were given access to records of two companies. Their auditor knew there were two companies. She just never bothered to ask. Again, I don't have to prove their case for them. And that seemed to be the assumption from the court is, well, you hit the ball. You sprung this on us. No, I didn't. You knew from the start in the audit that there was two companies out there. You didn't ask why he was listed under a different company. That's not our fault or our problem. We did give them the records to show that he was recorded for the time he actually went to the offit, the Kiewit project, and that's what we should be liable for. I'd respectfully ask to reserve the remainder of my time for rebuttal. Thank you, Mr. Becker. Mr. Kosaki. Thank you, Your Honors, and may it please the court. My name's Keith Kosaki. I'm here on behalf of the trustees of the CLT&E Health and Welfare Fund and the Pension Fund, along with the International Union of Operating Engineers, Local 571. Sitting with me at the council table is Duncan Young, and in the audience is Mike Weinberg, who also represents the trust funds. To start with, I'd like to point out a couple of facts that opposing counsel pointed out and remind the court that this is an appeal from a bench trial of an ERISA collection action. The findings of fact are subject to a clearly erroneous standard of review. The district court also relied on witness credibility to make its factual findings, which is a deferential standard before this court. First, with respect to whether Jose Tovar is a union member or not, that's irrelevant. Under the contract, it's covered work. It's not union membership. That triggers the obligation to contribute to the funds. Nebraska's also a right-to-work state, and you can't discriminate against someone based on union membership. There were a lot of discussion about the records. First of all, with respect to Judge Collin's question about the alter ego, Anderson Plus isn't the contractor on the Kiewit-Stratcom project. Anderson Excavating is the contractor on that project. Jose Tovar was reported as Anderson Excavating's employee on that project. When we saw that in the certified payrolls during the audit, that's what triggered the question, okay, he appears on this certified payroll. You didn't report his work or pay that to us. How much more time does he spend on the job site? And they represented to us, it's 15%. That's not something we made up. That's not something we assumed. That was something that was represented to our auditors. But on that 15%, he was an employee of Anderson Plus, right? You don't have any evidence that he was an employee of Anderson Excavating. And the evidence is he was an employee of Anderson Plus, and that's why the district court used this alter ego analysis. Isn't that what happened? Yes. I would point out that this is the third time we've audited Anderson Excavating in 10 years. Well, I don't want to talk about that history. I just want to make sure I understand the alter ego and why it was relevant. I thought it was relevant. I thought the judge thought it was a necessary step in the analysis because Tovar was an employee of this other company. And so in order to find the liability, he thought he had to conclude that one company was an alter ego of the other. Right. And so my question, I guess, is whether he applied the right standard on that alter ego question. Yes. I think he did. Well, here's my concern. Maybe you can address it. He applied the standard from this Scanlon case from our court where the court talks about the common law standard for piercing the corporate veil between an individual and a corporation. And this is two corporations in this case. Right. And there was no evidence that PLUS is an actual corporation. In the trial record, there's no exhibits identified which would establish that PLUS is actually an incorporated entity. What do you mean? I don't understand. I mean, I understand that there was no. But he wasn't saying that any individual was an alter ego of Anderson PLUS, right? He was saying that Anderson PLUS is an alter ego of Anderson Excavating. Yes. That was the judge's finding. All right. So what evidence was there about the relationship between those two companies? Well, the shared employees. Assume Jose Tovar is employed by Anderson PLUS. He's working for Anderson and being reported as an Anderson employee on the certified payroll project. In addition to Mr. Tovar, there was another employee who they claimed was an Anderson PLUS employee by the name of Manuel Walker, and he shows up on Anderson Excavating certified payroll for that Kiewit-Stratcom project on a full-time basis for four months. So you had sharing of employees. In addition to that, Joshua Baker, who was one of the employees who the district court said wasn't doing any covered work, they claimed he was an Anderson PLUS employee as well, and when they asked him, well, what does he do? Well, he works at Anderson's landfill. He works at our landfill. So right off the bat, you've got two companies, a unity of interest. Who controlled each of those companies? Was it the same shareholders? Well, there's no record, no evidence in the record of that. But you had Virginia Anderson, who's Anderson Excavating's president, I believe, testifying what all these Anderson PLUS employees were doing, and you even heard opposing counsel with Mr. Tovar say he worked for Anderson for 20 years. So, again, it's a unity. Is Anderson Excavating a closely held corporation controlled by Virginia? That's my understanding, yes. Was that in the record, do you think? As far as their Anderson separate corporate existence, no. That was alleged, I think, in the complaint, and I think that was admitted in the answer. All right. Well, I'm just a little – I understand this issue came up sui sponte, and it doesn't sound like there's much of a record about these two corporate entities. I'm just a little concerned whether there's enough of a record to support an alter ego conclusion. So if there's anything else you want to add about it. I think there is because when the district court ran through its analysis on its factual findings, the sharing of employees was one factor that the district court pointed out. The second factor was we came in to do a payroll audit of Anderson Excavating as opposing counsel admits. They gave us everything, including Anderson Plus records for Jose Tovar, for all these employees. During the audit, I think it's Exhibit 57, Joanne Waldy, the outside auditor, sent a roster of employees to Anderson, said, can you identify the job classifications of these people? And Jose Tovar's name is on there. They didn't say, he's not our employee, he's a Plus employee. They said, he's a mechanic. When we sent them the audit results letter, which is Exhibit 11, and they came back to us and said, can you remove Mr. Tovar from this because he doesn't spend 15% of the time because he's a mechanic, they never mentioned anything about Anderson Plus. And I think the district court handled this well because there was evidence that came in that they're interrelated. And in our brief, we argued that, we also argued that you could find that they're a single employer as that term is defined under ERISA. Yeah, but I think our cases say we don't use the ERISA labor law standard for alter ego. But single employer and alter ego are a little bit different because the way ERISA defines employer, it includes persons, including groups of employers that act in the interest of employers. And so you actually have Anderson and Anderson Plus that are acting together. And for the benefit of each other, the employees are passing back and forth, they're being reported on, on certified payroll reports, which are significant because they're signed and the truth of the accuracy of those records are sworn to. And the district court again found, well, if we adhere to this corporate fiction as part of its alter ego analysis, it would result in an avoidance of collective bargaining obligations, which is why it applied that alter ego analysis. Mr. Kasaki, what exactly is the significance of the delinquent policy and procedure document? That's for the interest in liquidated damages on the delinquent contributions because the statute says they're mandatory, but for liquidated damages, they have to be pursuant to. But were its contents undisputed? Yes. And Judge Collin, to your point, I don't think he, on page 18 of the district court's findings of fact, which is at joint appendix 155, I don't think he's applying ERISA standard because he mentions the corporate law standard that does, which is the Eighth Circuit. You mean the standard from Scanlon that he quotes in the... It cites Scanlon, but there was an alter ego analysis in Scanlon, but the court found that the two entities were alter egos of each other. Where? In Scanlon. I thought Scanlon was a corporation and an individual. It was a corporation and an unincorporated entity. I see. Right, so I think Scanlon goes more towards the single employer side. Well, when you say Judge Girard cited the corporate law standard, what are you referring to? When he says under ERISA, the Eighth Circuit applies the corporate law standard to determine alter ego status because it strikes an appropriate balance between... Yeah, yeah. And that's the standard that the Eighth Circuit has adopted. So he did, while he cited Scanlon, he did apply the corporate law standard that this court has adopted. Also, before... Coming back to the covered work argument, first of all, Dawn Helms isn't a union auditor. She's the CLT&E auditor. Under that shifting burden analysis, the funds have the initial burden to demonstrate covered work wasn't reported on, which we did by the certified payroll and relying on the representation by Anderson, which we're entitled to do, which, in addition to relying on their representation to conclude that they owe on Tovar, if you look at the trial testimony, pages 321 to 325, Dawn Helms says that when we got the initial audit results, which are reflected in Exhibit 62, she went over those with Ms. Kaler at Anderson Excavating, and she removed employees who Ms. Kaler said didn't do covered work, and that's reflected on the final audit result letter, which is Exhibit 11. And if you compare Exhibit 62 to Exhibit 11, 14 employees were removed from the preliminary audit results to the final audit result letter. So we didn't just rely on them to say that Tovar's covered. We relied on them for so much more. And as for the burden-shifting argument, the burden then shifts to the employer because by statute they're required to maintain records, and that's 29 U.S.C. 1059. We don't have to tell them to maintain records. They're required by law to do so, and when the burden shifts to them, they're required to come forward with records to establish the precise amount of covered work, and that's the way the burden-shifting analysis works in that case. And I would also say McKenzie, the funds auditors in the McKenzie case, they made a lot of assumptions. Even though there were multiple collective bargaining agreements, there were multiple work jurisdiction disputes in that case. It was the carpenters who were claiming all this work, but the employer had collective bargaining agreements with multiple craft unions, all who claimed jurisdiction over the work, and that's why this court in that case said the funds didn't meet their initial burden because they couldn't establish that covered work wasn't paid on. And real quick, I want to address something as far as attorneys' fees. Those are discretionary with the court. We would ask that amount be affirmed because we don't think the court abused its discretion. I will point out the court seemed to raise something about duplicate billings. Our office's longstanding practice in litigation matters is that we split the bills between the two funds evenly. So if we do two hours of work on a litigation matter, one hour gets billed to the pension fund, one hour gets billed to the health and welfare fund. That's our longstanding practice. It could have been explained. We should have explained it better to the district court. We didn't, but I want to make clear there's no duplicate billings there. We don't cross-appeal that because, again, the amount of fees is subject to the district court's discretion. We believe they got there. We believe that decision is correct. And one last thing I wanted to address with the burden shifting. I would also note that the court applied the same burden shifting standard and excluded two employees that we were making claim on, concluding that they didn't do covered work based on the facts. So we would submit that the district court got it right. The factual findings are supported by the record. There's no error of law. And we would ask that you affirm the district court's decision in all respects. Thank you, Mr. Kasach. Mr. Becker, your rebuttal. Thank you, Your Honor. There should have never been a shifting. Pardon me. I'm having a bit of problem with the light timer. If I could have one second. Reset for him. Just give him a round number. Okay. Two seconds. That's a round number. I'll speak fast. Roundup. It started flashing and now all the buttons are all red. So I apologize. There we go. Okay. The burden shifting analysis should have never been triggered because we gave them the records. The one job they have. Jose Tovar is working about 2000 hours a year over a three year time period. That's 6000 hours. He's reported for 18.6 hours. We gave them the records that showed exactly how much time he spent on the one job they were auditing. When I asked Dawn Helms, well, you supposedly had this interpretation of 15% of the job site at page 361. Did Eileen specifically say what job site? She did not. They just make this assumption. If they're talking about the job site, then it's Kiewit. And we did give them records showing precisely how long he was Kiewit. There never should have been this shifting because we gave them the detailed records that showed with precision how much time he was there doing covered work. A couple other issues on interest. I just want to point out you asked the significance of the document where they adopted the interest and liquidated damages. Our position on that is the trusts say at section 12, section 14 of one of the trusts, it's governed by Nebraska law. At article 15, section 2, it says it's governed by Nebraska law. And the point is even if they can get interest under federal law, the trusts themselves are governed by Nebraska law. Nebraska law does not allow an interest rate greater than 16%. They charged 18%. That's the whole point. They were beyond Nebraska law. That then means you revert to the title 26 standard, which is a much lower interest rate. They don't get to charge 18% because they're governed by Nebraska law under their trust agreements. And Nebraska law prevents an 18% interest rate charge. On the Lodestar analysis, they got 20% of what they were suing my client for. There's no downward adjustment for that unfavorable result. And that's an independent error of the district court. But the bottom line is Jose Tovar was not an employee of Anderson Excavating. And for the project that they audited, we gave them detailed records that showed he was there 18.6 hours. That should have been the end of this case. I'd ask the court to reverse the district court's decision. Thank you, Mr. Becker. Court thanks both counsel.